(No. 30773.—)
MARY MADGE YOWELL, Appellee, *vs.* BENJAMIN F.
HUNTER *et al.*, Appellants.

*Opinion filed March 24, 1949—Rehearing denied May 11, 1949.*

HAWBAKER & SIEVERS, of Monticello, and MONROE, ALLEN & McGAUGHEY, of Decatur, (ROY W. ADNEY, of Lebanon, Ind., of counsel,) for appellants.

MEYER & FRANKLIN, of Champaign, and RUSSELL I. RICHARDSON, of Lebanon, Ind., for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the proponents from a decree of the circuit court of Piatt County which set aside an instrument purporting to be the last will and testament of Evangeline Hunter, deceased, on the ground that said instrument was forged by writing the language and body of the same around the penciled signature of the testator. A freehold being involved, the appeal is perfected to this court.

Evangeline Hunter died on November 18, 1945, in a hospital at Lebanon, Indiana. At the time of her death she and her husband, Benjamin F. Hunter, whom she had married in 1924, were residents of Indiana and had no children. Mary Madge Yowell, Mrs. Hunter's sister, was, with the exception of her husband, her sole heir-at-law. Mrs. Hunter and Mrs. Yowell were the only children of Carl Gillespie, a resident of Piatt County, who died testate in January, 1945, being the owner of over 800 acres of land of which approximately 320 acres were devised to Evangeline Hunter in fee simple. Prior to that time Mrs. Hunter had receive 160 acres of land in Piatt County as a result of a voluntary partition of her mother's land.

Mr. Hunter suffered a physical handicap in connection with his eyesight and was unable to read without the use of a double magnifying glass and it was necessary for him to have assistance in conducting his business and personal affairs by reason of this difficulty.

Shortly after Mrs. Hunter's death her sister, Mrs. Yowell, petitioned for letters of administration in Illinois and was appointed administratrix of her sister's estate. On February 9, 1946, the purported will of Evangeline Hunter was admitted to probate by the circuit court of Boone County, Indiana. This document is unusual in form because the only signature of the testatrix thereon appears in the *exordium* clause. The document is upon a paper of unusual thickness, finish, shape and size and appears to be a flyleaf from a book or a typewriter manual. The will was signed by two witnesses and is as follows:

"I. *Evangeline Hunter* On the 14th, day of August, 1945, being of sound mind and in possession of all of my faculties declare, to whom it may concern that I bequeath all I own or possess both real and personal to my husband Benj. F. Hunter, at my death, he to act as administrator without bond.

It is requested that our mutual understanding of purchasing a private lot in Maple Grove Cemetary, Farmer City, Illinois be carried out.

This record is made and left to express my desires and wishes, to serve as my last will and testament, and as protection and assurance for Ben, in case anything should happen to me.

| | |
|---|---|
| Witness | *B. A. Davis Lt. Col. ac. 16 Aug. 1945* |
| Witness | *Gregg B. Burkhalter, 1 Nov. 1945* |

A petition for letters of administration with the will annexed was filed in Piatt County, said will was admitted to probate in Illinois on April 13, 1946, J. Herrick Tippett was appointed administrator with the will annexed, and the letters of administration previously issued to Mrs. Yowell were revoked.

On November 22, 1946, this suit to contest the will was filed by Mary Madge Yowell. The original complaint and the first amended complaint were stricken upon motion by the defendants. The second amended complaint upon which the matter went to issue consisted of two counts. Count 1 alleged that plaintiff was the sister of Evangeline Hunter, the death of Evangeline Hunter and

the probate in Indiana of the supposed will, together with the appointment of an administrator with the will annexed in Piatt County. It also alleged that Mrs. Hunter was the owner of real and personal property situated in Piatt County, of an aggregate value of approximately $150,000, and that the plaintiff but for said will would have inherited property of the value of approximately $75,000. Paragraph 9 thereof is as follows:

"9. Said purported will was forged by writing the language and body of the same around the penciled name of 'Evangeline Hunter,' without her knowledge or consent, and was not executed by said Evangeline Hunter as and for her Last Will and Testament; and is not her last will and testament."

Count 2 was in the alternative and repeated and re-alleged the foregoing particulars with the exception of paragraph 9 and in its stead alleged:

"2. That said Evangeline Hunter did not sign her name to said instrument and the same was not executed by said Evangeline Hunter and was not attested in her presence by two or more credible witnesses, as required by Section 43 of the Probate Act of the State of Illinois, being paragraph 194, Chapter 3, Smith-Hurd Illinois Annotated Statutes, enacted July 24, 1939, and the same was not otherwise executed in accordance with the said statute of the State of Illinois and was not good and sufficient to pass title to real estate in the State of Illinois, and the same is not her last will and testament."

Benjamin F. Hunter and J. Herrick Tippett both filed answers denying the charges contained in the second amended complaint. They also pleaded additional matter of special defense which was on motion stricken. Both parties filed motions for rules on the other to file sworn lists of documents and photographs which were to be used upon the trial. These motions were granted as to documents and photographs generally but were denied by the court as to the documents, photographs and micrographs prepared by the expert witnesses retained by the respective parties.

A pretrial conference was held on September 25, 1947. At this conference a jury trial was waived by both parties and a request was made by the defendants to limit the number of expert witnesses under Rule 23A of this court and to exchange the names and addresses of the experts to be called by each side. The court ruled limiting the number of expert witnesses to five with the further provision that no more than two expert witnesses should be called by either party to testify to a matter that had been already testified about. The parties were not required to disclose the names of their expert witnesses.

At the trial the plaintiff called three expert witnesses and the defendants called only two. Plaintiff introduced photographs and micrographs prepared by her experts over the objection of the defendants. The trial consumed several days and the court took the matter under advisement and on March 1, 1948, filed its opinion finding the issues for the plaintiff and that the instrument in question was not the last will and testament of Evangeline Hunter but was forged by typing the body of the will around the signature of Mrs. Hunter. Subsequently a decree annulling and setting aside the purported last will and testament was entered from which this appeal followed. The court did not rule upon count 2 and cross error has, therefore, been assigned by the plaintiff.

The defendants have assigned as errors relied upon for reversal the following:

"The decree and findings of the Court are not based upon an impartial review of the evidence, but are the result of the pre-conceived prejudice of the trial Court.

"The trial Court erroneously conducted experiments outside the presence of counsel and without any agreement of the parties therefor, and erroneously based his finding of fact upon such experiments.

"The trial Court erred in refusing motion of Appellants for an order at the pre-trial conference requiring the re-

spective parties to file with the Clerk a list of photographs or photo-micrographs in their possession and intended to be used at the trial of the cause.

"The trial Court erred in failing to abide by his pre-trial ruling that 'if more than two of these expert witnesses undertake to testify to a matter that has already been testified about, it will not be admitted if there is objection on the ground of materiality.

"The court erred in admitting over objection as a part of the contestant's case in chief evidence of the witnesses Mary Harmon, Frances McKenzie, Grover W. Watson, Lyle G. Herrick, Mrs. Lyle G. Herrick, Madge Yowell and Cassius Yowell to the effect that relations between the decedent and Madge Yowell, (the contestant) at and prior to the time of death of Evangeline Hunter were friendly and cordial.

"The Court erred in admitting photographs offered by the plaintiffs and over the objections of the defendants.

"The Court erred in admitting over objection evidence of conversation between the contestant, Madge Yowell, and her husband, Cassius Yowell, and the Defendant, B. F. Hunter, at the Yowell home on or about November 30, 1945.

"The Court erred in refusing to admit in evidence Defendant's Exhibits 301, certain entries in the diary of Evangeline Hunter, Exhibits 320, 323, 324, 325 and 327.

"The court erred in the findings and decree:

"(A) That the instrument in question was not the Last Will and Testament of Jeannette Evangeline Hunter;

"(B) That the instrument in question was a forged instrument;

"(C) Ordering the Will in question set aside and held null and void.

"(D) In finding that the material allegations of the Second Amended Complaint are true;

"(E) Entering a Decree setting the Will of Evangeline Hunter aside.

"The court erred in awarding execution against the Administrator for costs."

The evidence presented is voluminous, there were over 2000 pages of testimony taken, and it would serve no useful purpose to make a long recital of the evidence in this opinion. The testimony of Lt. Col. B. A. Davis had been perpetuated by a proceeding previously filed in the court. The other subscribing witness, Gregg B. Burkhalter, appeared and testified at the trial. Mr. Hunter and Mr. and Mrs. Guy Hoff, Mrs. Hoff being Mr. Hunter's sister, who came to live with Mr. Hunter immediately upon his wife's death, testified with reference to the finding of the will sometime after Mrs. Hunter's death. There was evidence introduced on the part of the proponents of friction between Mrs. Hunter and her sister, Mrs. Yowell. In opposition thereto there was testimony presented by five people, including an attorney and one of the judges of the circuit court in which the case was tried, indicating from their observations of the conduct of the two sisters that the relation between them was friendly.

The attesting witnesses were both old acquaintances of Mr. and Mrs. Hunter and had been accustomed to visiting in their home. Both men had been associated with Mr. Hunter as employees of the Gulf Oil Company but neither of them was associated with him at the time of his wife's death or at the time of the trial. There was no showing of personal interest in the outcome of the trial other than their friendship with Mr. and Mrs. Hunter. Both of these men were prominent in their chosen professions and during the war had occupied important positions, Burkhalter being a commander in the Navy and Davis a lieutenant colonel in the Army Air Force. At the time of the trial Davis was in Japan in a civilian capacity. There was no direct impeachment of the attesting witnesses other than the testimony of the documentary experts.

Mr. and Mrs. Yowell testified that at the time of Mrs. Hunter's funeral Burkhalter was present in the Hunter home before the funeral services for Mrs. Hunter and that he and other persons unknown to them conferred with Mr. Hunter for more than an hour in the dining room of the Hunter home. Burkhalter testified that he was not in the Hunter home prior to the funeral and that he saw Mr. Hunter for only a short time afterwards. Likewise Mr. and Mrs. Yowell's testimony was contradicted by Mr. Hunter. All parties agree as to the genuineness of the signature of Mrs. Hunter on the purported will, and the sole question is as to when the signature was affixed to the document, before or after the body thereof was typed. Both of the attesting witnesses testified that Mrs. Hunter asked them to witness her will when her husband was not present and stated that she said it had been prepared by her. The presence of the witnesses in the Hunter home on the date the will is supposed to have been witnessed is verified by entries in Mrs. Hunter's diary.

The first alleged error from a chronological standpoint is that the trial court should have required the plaintiff to furnish defendants photographs prepared by her expert witnesses which they intended to offer at the trial. The defendants contend that under Rule 17 the plaintiff was required to furnish a list of the photographs prepared by her experts which they intended to use in the trial.

Rule 17 provides that any party may file a motion for an order directing the other party to file a sworn list, "of all the documents, including photographs, books, accounts, letters and other papers, which are, or which have been, in his possession or power, material to the merits of the matter in question in said cause." It is to be noted that the rule contains an exception which is as follows: "This rule shall not apply to memoranda, reports, or documents prepared by or for either party in preparation for trial,

or to any communication between any party or his agent and the attorney for such party." This court has not previously been called upon to amplify the meaning of Rule 17 with reference to requiring the production of photographs prepared by expert witnesses. It is to be noted that in the exception the word photographs is not used. We conclude, however, that the trial court properly held that photographs prepared by expert witnesses were actually prepared in preparation for trial and as such were not subject to production under Rule 17. The question might occur as to what is or is not preparation for trial but as we view the photographs prepared by the experts in this case it is apparent that all of them were made in preparation for trial. The fact that the exception in Rule 17 does not specifically use the word "photographs" does not make the same subject to production under the rule, since the clear meaning of the exception is that anything prepared by or for either party in preparation for trial is not subject to production under the rule. Written reports made by experts are not subject to the rule and we can see no useful purpose in making the photographs taken by the experts and used by them in formulating their reports and their opinions subject to production under the rule.

Under Rule 23A the court could not require the parties to divulge the names of their expert witnesses and we do not believe that it would be proper to permit the parties to indirectly obtain the names of such experts by requiring the parties to produce photographs taken by these experts in preparation for trial.

The proponents have contended that the court erred in permitting five witnesses to testify as to the apparent health of Mrs. Hunter and the apparent relationship existing between Mrs. Hunter and Mrs. Yowell. We have carefully read the testimony of these witnesses and can see no reversible error in such action by the court. The evidence of these witnesses was not weighty, since it was admittedly

based upon mere casual observations by the witnesses. In view of the fact that the matter was tried before the court and in view of the peculiar nature of the case, we believe that it was proper and within the discretion of the court to admit all evidence in any way showing the circumstances under which the testatrix lived, including her relationship with her husband her sister.

The defendants have also assigned as error the court's permitting the plaintiff and her husband to testify as to conversations occurring on November 30, 1945, between them and Mr. Hunter, in which the parties discussed, according to the Yowells' testimony, an arrangement whereby Mr. Hunter would receive all the income from the land owned by Mrs. Hunter during his lifetime. Defendants contend that such conversation was incompetent because it related to the settlement, compromise or avoidance of litigation. At that time there was no suit pending and no indication of any litigation between the parties. Mr. Hunter's version thereof differs entirely from that of the Yowells and indicates that it was merely a discussion regarding the appointment of an administrator for his wife's estate. In any event, we do not believe that such conversation could be considered as having taken place in an attempt to settle, compromise or avoid any litigation pending or then contemplated by the parties. The materiality of the testimony is doubtful and the court should not have placed any weight upon the same, in our opinion.

As previously pointed out, the contestant called three expert witnesses, namely, Herbert J. Walter, Vernon Faxon and Edwin Schroeder, and the defendants two expert witnesses, namely, Rudolph B. Salmon and Leslie W. Vollmer. The proponents have assigned as error that the trial court erroneously permitted three experts to testify for the contestant rather than two, as previously ordered by the court at the pretrial conference. It is to be noted that the words of the court with reference to limiting the number of expert

witnesses were "The Court is going to limit the number of expert witnesses to five with this further suggestion. If more than two of those expert witnesses· undertake to testify to a matter that has already been testified about, it will not be admitted, if there is objection on the ground of materiality."

When the third expert for the contestant was being qualified the defendants objected upon the ground that the court had limited each side to two expert witnesses. A discussion between the court and counsel ensued.· As the third witness proceeded to testify no objection was made by defendants that any particular testimony given by the witness was not material. Likewise no objection was made that any of his testimony was cumulative and no motion was made at the conclusion of his testimony to strike the testimony or any part of it. In view of this state of the record, we do not see any reversible error committed by the trial court in permitting the third expert witness to testify for the contestant.

The three witnesses for the contestant gave it as their opinion that the typing on the document was made after the signature of the decedent was written thereon, and the two expert witnesses for the proponents gave it as their opinion that the typing was done before the signature was written and not afterwards. The contestant proceeded on the theory that someone had found a signature of the decedent on a flyleaf of a book, cut it out and wrote the will around it. It is interesting to note that the expert witnesses for the contestant gave their opinions from an examination under a microscope but that they did not reproduce by photograph their findings through the use of the microscope. One witness for the proponents produced photo-micrographs tending to support his testimony to the effect that Mrs. Hunter's signature was imposed over and upon the typing. Walter and Faxon based their opinion upon the crowding of the body of the writing toward the

top and left of the paper, the large space precisely occupied by the decedent's name, the failure to indent the first paragraph when the other paragraphs were indented, the slant of the writing of the testatrix's name as compared with the usual straight and smaller writing by her on business papers and the general impression that the document was carelessly prepared and yet fit exactly the space it occupied by typing at the top of the page. They also considered the misspelling and irregular punctuation of the document as compared with the general education and experience of the testatrix. The witness Schroeder confined his testimony mainly to the intersection of the signature with the typewritten letters.

The proponents' expert Salmon based his opinion upon the fact that the signature of the testatrix was superimposed over and upon the typewriting and in addition pointed out that if the signature had been placed on the paper by the testatrix while the paper was in a book prior to typing the paper, there would be embossing on the testatrix's signature on the back side of the paper, but that in this case there was no embossing and that fact indicated that the paper had been signed when not in a book.

With reference to the testimony of all of the experts it can be fairly stated that the determination whether the penciled signature was superimposed upon the typewriting or the typewriting was superimposed over the penciled signature is a question which is extremely difficult to determine, and that the normal impression which one would receive in examining a document of this type was that the typewriting had been superimposed over the signature because of the nature of typewriting symbols as shown on the paper as compared with penciled signatures. While it has been pointed out in the course of the trial that the embossing of the signature is not an absolute test of the fact that the signature was or was not written on the paper while the paper was in a book, it is significant to

note that the opinion of the expert Salmon that the document was not forged because of the lack of embossing thereon is entitled to as much weight in our opinion as the testimony by the other witnesses, since this theory is not disputed by any of contestant's witnesses.

As we view this case, it appears to this court that the testimony of the attesting witnesses must be given considerable credence. The expert testimony as to the forgery of the instrument appears to be evenly divided, and in view of the extreme difficulty and, we believe, proved uncertainty in determination of the incidence of the writing and the typing with reference to one another, we do not believe that the expert testimony is sufficient, particularly in view of the witness Salmon's observations regarding embossing, to overcome and outweigh the testimony of the attesting witnesses.

The opinion of an expert may be of value only where it calls attention to facts which are capable of verification by the court and where the opinion is based upon such facts and is in harmony therewith. (*Lyon* v. *Oliver,* 316 Ill. 292.) The original exhibits introduced in evidence have been certified to this court with the record, and we have had the benefit of them in our consideration of this case. In arriving at a conclusion by comparison, we are in as good position to arrive at a correct result as the trial court, though, so far as the testimony of witnesses is concerned, he had the advantage of hearing them testify. (*Fekete* v. *Fekete,* 323 Ill. 468.) The expression of this court in the case of *In Re Will of Barrie,* 393 Ill. 111, and *Fekete* v. *Fekete* that the opinions of experts with reference to handwriting are at best weak, in view of the great opportunity for error and temptation to form opinions favorable to the party calling the witness, is clearly demonstrated by this case.

The contestant has placed great weight upon the fact that both of the attesting witnesses were good friends and

business associates of Mr. Hunter. We believe that the record clearly shows that they were also equally good friends of Mrs. Hunter. The fact that they were good friends of the testatrix and of her husband should not affect their credibility. The court must keep in mind that Mrs. Hunter and her husband were not well acquainted with the people in Lebanon, Indiana, and had not lived in that community for any considerable period of time. It is entirely probable and natural that if Mrs. Hunter desired to prepare her own will she would not call upon some new acquaintance to witness the will but would naturally call upon some old acquaintances such as Col. Davis and Mr. Burkhalter. There is nothing in the evidence to indicate that either of these two gentlemen was in any way interested in the outcome of this litigation other than they had been acquaintances of Mr. and Mrs. Hunter. Nothing was shown which indicates any power which Mr. Hunter has or had with reference to the positions of these men in their chosen endeavors. Nothing has been shown indicating that he possessed or possesses any power of coercion over them. The witness Burkhalter, who appeared at this trial, was cross-examined thoroughly by the contestant and it does not appear that his testimony was in any way shaken or discredited.

The fact that this will was not found until approximately two months after Mrs. Hunter's death is not extremely unusual in view of Mr. Hunter's condition. In view of the undisputed testimony that Col. Davis was outside the limits of the United States until the latter part of January, 1946, indicates that any possibility for him to participate in the forgery was very limited, if not impossible. Mr. Burkhalter was present at the funeral and there is some dispute as to how long he stayed in the Hunter home, either prior to or after the funeral. The contestant has not shown that he was there for more than an hour and certainly if a forgery were going to take place

at that time it can hardly be anticipated that other persons would not be available to testify indicating that a forgery did occur, because Mrs. Yowell's testimony indicates that Mr. Burkhalter and Mr. Hunter and some other people were present in the dining room of the Hunter home for about an hour the evening of the funeral. Where the attesting witnesses are shown to be responsible individuals and the signatures to the document are genuine, and the evidence does not show an interest on the part of the attesting witnesses in conflict with that of the testator, their testimony should not be disregarded. *In Re Estate of Kehl,* 397 Ill. 251; *Sellers* v. *Kincaid,* 303 Ill. 216.

We should also point out that the question of the incidence of the signature and the typing does not appear to this court to control a determination of the issues in this case. None of the parties have indicated by their briefs or arguments what the situation would be if, in fact, Mrs. Hunter had herself written her name on this piece of paper and then typed in the body of the will after she had written her name. Certainly, under the law, such a will would be valid if properly witnessed regardless of when she placed her signature thereto, either before or after the typing, so long as the signature was considered a signature and not merely descriptive. In view of the undisputed testimony by the credible witnesses that Mrs. Hunter declared this instrument to be her will and that they signed in her presence as attesting witnesses, and in view of the fact that the question of the incidence of the signature and the typing is not entirely controlling as to whether the will was a forgery or not, we conclude that the court should have found the issues for the proponents of the will under count 1 of the complaint. We believe that the decision of the court, although not necessarily the result of prejudice, is clearly contrary to the manifest weight of the evidence, and we believe that the trial court improperly relied upon evidence which was of little weight and materiality.

Much point has been made that the will contains certain errors in punctuation and in spelling. In view of the education and experience of the testatrix, we believe that such contention is worthy of consideration. However, there has been nothing produced indicating Mrs. Hunter's typing ability, and we do not believe that the misspelling and improper punctuation in this particular document is of sufficient evidence to warrant the trial court in disregarding the testimony of the attesting witnesses.

The contestant has assigned as cross error the failure of the trial court to rule upon count 2 of the complaint, which alleged that the will was not executed pursuant to Illinois law. In support of this contention, she has cited *Hoffman* v. *Hoffman,* 370 Ill. 176, and *Bamberger* v. *Barbour,* 335 Ill. 458. In both those cases the only signature of the testator appeared in the *exordium* clause of the will, and it was held that there was no showing that the descriptive name written in the *exordium* clause was intended as an authenticating signature of the testator. In both of those cases the entire will was in the handwriting of the testator. In the case at bar the entire will was typewritten and the fact that the signature was written rather than typed in the *exordium* clause would indicate that it was intended as an authenticating signature, if, in fact, placed there by the testatrix. The testimony of the witness Burkhalter indicates that the testatrix informed him that she had signed the will. We, therefore, can see no error committed by the trial court in refusing to find the issues for the contestant under count 2 of the complaint.

The decree of the circuit court of Piatt County will be reversed.

*Decree reversed.*