Beatrice Foods Co., a Corporation, Plaintiff-Appellee, v. Warren W. Gallagher, d/b/a Fullerton Dairy, Defendant-Appellant.

### Gen. No. 10,504.

Fourth District.

March 10, 1964.

Rehearing denied April 6, 1964.

Thomas F. Walsh, of Lincoln, for appellant.

Roger Lapan and Ralph Schroeder, of Bloomington, for appellee.

CROW, P. J.

The defendant, Warren W. Gallagher, d/b/a Fullerton Dairy, appeals, following a verdict of a jury, from a judgment entered thereon for $12,262.77 by the Circuit Court of McLean County in favor of the plaintiff Beatrice Foods Co., a corporation, the defendant's post-trial motion having been denied.

That part of the complaint, Count I, involved on this appeal and upon which recovery is based, alleged, in substance, that the plaintiff is a Delaware corporation authorized to do business in Illinois; on December 4, 1958 the defendant Warren W. Gallagher, d/b/a Fullerton Dairy, submitted a bid to the State of Illinois, to provide all the dairy products for the Kankakee State Hospital, Kankakee, for January, February, and March, 1959; the bid was accepted and the State of

10

Illinois agreed to pay $35,548.82; the plaintiff Beatrice incurred all the costs necessary for the defendant to complete that contract; those costs included the processing of dairy products and packaging thereof in McLean County, as to which the defendant incurred no expense; the plaintiff obtained all the dairy products for that purpose at its expense from its own suppliers, and the defendant incurred no expense in that respect; the plaintiff purchased dairy cartons identical with those used by the defendant in his business and imprinted with his customary printing, at its expense, and at no cost to the defendant; the plaintiff incurred all the costs of delivery of the dairy products to Kankakee State Hospital, and the defendant incurred no such expense; all other expenses necessary for the defendant to fulfill his contract with the State were incurred by the plaintiff and not the defendant; the defendant received the benefit of the advertisement of Fullerton Dairy on the cartons; the defendant received the benefit of being a successful contract bidder with the State; under that contract the defendant received three State of Illinois checks totalling $35,548.82, each check covering a one-month period; the defendant endorsed and transferred two of the checks or their proceeds to the plaintiff at its Bloomington, Illinois office; the defendant received the third check, for the month of March, 1959 for $12,262.77 for the dairy products furnished for that month, but wrongfully withheld that money from the plaintiff, wrongfully deposited it to his own account, and refused to transfer it or the proceeds to the plaintiff. The complaint had previously alleged similar prior bids and acceptances on June 5, 1958 by the defendant and the State of Illinois for such dairy products, and deliveries in a similar manner under similar circumstances by the plaintiff to the same place for the months of July through September, 1958,

11

the defendant receiving State checks for that prior period totalling $37,472.72; that similar prior bids, acceptances, undertakings, deliveries etc. to the same institution took place on September 10, 1958 and following for October, November and December, 1958, the amount of the State checks for that prior period totalling $36,746.40; that all of the foregoing prior checks for such dairy products so furnished such institution for such prior periods were drawn in favor of the defendant and endorsed or the proceeds transferred by the defendant to the plaintiff at its office in Bloomington. The preceding allegations of the complaint relating to those prior periods of July–September, 1958 and October–December, 1958 were identical in nature to the substance of the allegations relating to the period January–March 1959, which we've set forth, except as to the periods concerned, the amounts involved, and the disposition of the State checks.

Count II of the complaint related to an alleged open account for goods and products and a balance of $1199.32 allegedly due the plaintiff thereon. That Count is not before us, the defendant having paid that before trial.

The defendant moved to transfer the venue of the cause to Logan County upon the grounds that the defendant was a resident of Lincoln, in Logan County, and that the transaction out of which the cause of action is alleged to have arisen did not occur, or any part thereof, in McLean County. A hearing was had on that motion and the Court entered the following order:

"And now on this day comes the defendant by his attorney and presents his Motion for a change of venue. The Court having heard said Motion, the evidence produced, the arguments of counsel

12

and being fully advised, doth deny said Motion for change of venue."

Thereafter a motion was made by the defendant to strike Count I, and dismiss the cause of action upon the grounds the complaint did not allege a sufficient interest in the plaintiff to maintain the action, and did not allege any duty on the defendant, and others. That motion was denied and the defendant ruled to plead.

The defendant subsequently filed an answer admitting certain paragraphs of Count I of the complaint, denying others, and reiterating his contentions concerning venue. As to the matters alleged in Count I under the alleged bid of December 4, 1958, foregoing, for the period January–March, 1959, the answer admitted he submitted the alleged bid to provide dairy products, it was accepted and the State agreed to pay $35,548.82, he received the State checks totalling $35,548.82, he transferred two of the checks or the proceeds thereof to the plaintiff at Bloomington, and he received and deposited in his own account one of the State checks for $12,262.77 for March, 1959, though denying such was wrongful or that the plaintiff was entitled thereto. The answer also admitted the corresponding allegations of Count I as to the matters alleged under the prior bids for the prior periods of July–September and October–December, 1958.

The defendant's theory is that (1) the action was not filed in the proper venue and the Circuit Court of McLean County is without jurisdiction; (2) the Court erred in entering judgment on a verdict unsupported by the evidence and manifestly against the the only evidence offered; (3) the Court erred in admitting evidence of offers of settlement; (4) the Court erred in giving an argumentative instruction tendered

13

by the plaintiff and in refusing to give proper instructions tendered by the defendant, including an instruction incorporating the defendant's theory of the case; (5) the Court erred in admitting incompetent and irrelevant evidence as to an earlier and different agreement of the parties; and (6) Count I does not allege a cause of action.

The plaintiff's theory is that the complaint and evidence shows an implied contract by the defendant to pay for the dairy products concerned and to deliver to the plaintiff the foregoing $12,262.77 check for the March, 1959 deliveries by the plaintiff to Kankakee State Hospital, or, alternatively, it may recover on a quasi contract basis, and that the defendant's arguments for reversal are not supported by the law and the record.

■ The evidence at the hearing on the defendant's motion for change of venue is not abstracted. The defendant argues, in effect, that the Court ignored that evidence. If the record contains the evidence it is required to be condensed in narrative form so as to present clearly and concisely its substance, and the abstract must be sufficient to present fully every error relied upon: Supreme Court Rule 38, Appellate Court Rule 6,—Ill Rev Stats 1963, c 110, §§ 101.38, 201.6. We will not search the record to reverse: Backlund v. Thomas (1963), 40 Ill App2d 8, 189 NE2d 682. The evidence at that hearing being not abstracted, the abstract is not sufficient to present fully this claimed error, and we cannot consider the defendant's contention as to venue. The abstract is the pleading of the party in a Court of review, and what is sought to be reviewed must be contained in that pleading: Richman Chemical Co. v. Lowenthal (1958), 16 Ill App2d 568, 149 NE2d 351. Further, under Section 5 of the Civil Practice Act, Ill Rev Stats, 1963, c 110, § 5, so far as relevant, an action may be commenced in the County in which the transaction or some part thereof occurred

14

out of which the cause of action arose. The complaint, Count I, alleged, as to the defendant's bid of December 4, 1958 for the period of January–March, 1959 that, inter alia, the plaintiff processed and packaged the dairy products in McLean County, and that the defendant transferred two of the three checks or their proceeds totalling $35,548.82 for that period to the plaintiff at its office in Bloomington, McLean County. The defendant's answer admitted the allegations as to the transfer of those two checks or their proceeds. Similarly, Count I alleged, as to the defendant's prior bids for the prior periods of July–September and October–December, 1958, that, inter alia, the plaintiff processed and packaged the products in McLean County, and that the defendant transferred all the checks or their proceeds for those periods to the plaintiff at its office in Bloomington, McLean County. And, similarly, the defendant's answer admitted those allegations as to the transfer of all those checks or their proceeds. The evidence at the trial reasonably supported such of those allegations relating to venue as were not admitted by the answer and reasonably established other facts and circumstances transpiring in McLean County which were an integral part of the plaintiff's alleged cause of action, from which the conclusion can be reasonably reached that some part of the transaction out of which the alleged cause of action arose occurred in McLean County: Standard Mut. Ins. Co. v. Kinsolving (1960), 26 Ill App2d 180, 167 NE2d 241; Bagarozy v. Meneghini (1955), 8 Ill App2d 285, 131 NE2d 792. So if the defendant's contention as to venue were properly presented it could not be sustained. Winn v. Vogel (1952), 345 Ill App 425, 103 NE2d 673, representative of the defendant's cases on this point, has no application here.

As to the urged error in a certain given plaintiff's instruction and in the refusal of certain proposed defendant's instructions, there is no reference in the

15

abstract to a conference on instructions. There is a statement therein called "colloquy on instructions" and another called "further colloquy on instructions," the entire statement covering 18 lines in the abstract and consisting principally of certain comments by the Court at what is called "the termination" of the "colloquy." It is not indicated whether that was out of or within the presence of the jury. Also, the defendant's post-trial motion makes no reference at all to any instructions given or refused. The Court is required to hold a conference with counsel to settle the instructions, no party may raise on appeal the failure to give an instruction unless he shall have tendered it, the conference on instructions must be out of the presence of the jury: Ill Rev Stats, 1963, c 110, § 67,—and all objections made at the conference, and the rulings thereon, shall be shown in the report of proceedings: Supreme Court Rule 25–1, Ill Rev Stats, 1963, c 110, § 101.25–1. Not indicating a conference on instructions in accordance with the foregoing provisions of the Civil Practice Act and the foregoing Supreme Court Rule, this abstract is not sufficient to present fully the alleged error the defendant relies upon in this respect: Supreme Court Rule 38, Appellate Court Rule 6, supra. Further, a post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and a party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion: Ill Rev Stats 1963, c 110, § 68.1. Accordingly, this defendant's point concerning instructions given or refused may not be urged as error on this review,—the point is regarded as waived upon appeal: Backlund v. Thomas (1963), 40 Ill App2d 8, 189 NE2d 682; Richman Chemical Co. v. Lowenthal (1958), 16 Ill App2d 568, 149 NE2d 351; Perez v. Baltimore & O. R. Co. (1960), 24 Ill App2d 204, 164 NE2d 209; County Board

16

of School Trustees of Macon County v. Batchelder (1955), 7 Ill2d 178, 130 NE2d 175.

■ At the trial, Charles A. Peterson, Branch Manager at Bloomington, Illinois for the plaintiff, Beatrice Foods Co., testified for the plaintiff and the defendant Gallagher was called by the plaintiff for cross-examination under section 60 of the Civil Practice Act. The defendant called no witnesses in his own behalf, nor did he testify or seek to testify in chief himself, nor did his counsel examine him following the plaintiff's cross-examination.

The evidence of the plaintiff, together with the pleadings and admissions therein, show that bids were made to the State of Illinois by the defendant Gallagher and accepted, substantially as charged in the complaint, for the supplying for the several quarterly periods concerned of dairy products to the Kankakee State Hospital; the plaintiff carried out those contracts, with all costs of performance being borne by the plaintiff, and none by the defendant, and evidently the plaintiff did everything on its part to effectuate the arrangements substantially as charged.

Glenn H. Wilkinson was Branch Manager of the Bloomington office of the plaintiff for some years and was such during the time the plaintiff supplied the dairy products to the Kankakee State Hospital under the bids made by the defendant Gallagher to the State of Illinois. Wilkinson died April 1, 1959 at the end of the last period covered by the arrangement.

Charles A. Peterson, formerly assistant and later successor to Wilkinson, stated Fullerton Dairy had the contracts to supply dairy products to Kankakee State Hospital for July, 1958–March, 1959. The plaintiff from its Bloomington plant furnished the products to Kankakee, processed them, packaged them in cartons marked Fullerton Dairy, and delivered them to Kankakee, and the plaintiff incurred all the costs. The defendant had no costs in connection therewith.

17

He had no conversation with the defendant before March 31, 1959 about any commissions for the defendant. Peterson said he kept the accounts of the Bloomington plant and there was an account or accounts of Warren Gallagher or Fullerton Dairy, or Warren Gallagher, d/b/a Fullerton Dairy. All of the State checks received by the defendant Gallagher for monthly statements he rendered to the State for previous deliveries effectuated by the plaintiff for the period of July, 1958–February, 1959 were mailed to him by the State and then endorsed by him and sent, or the proceeds sent, or brought, by the defendant to the plaintiff in Bloomington for credit to his account. He said the defendant brought in the State checks to the plaintiff at Bloomington on 3 or 4 occasions. His account was credited each time. The plaintiff did not receive the $12,262.77 check for March, 1959. The first time Peterson had any conversation with the defendant Gallagher was in the last half of May, 1959, after the end of the last period of deliveries concerned, by telephone, when Peterson asked Gallagher if Gallagher had received payment from the State for March, 1959 deliveries to the Kankakee State Hospital and requested the proceeds be transmitted to Beatrice. He said that Gallagher replied there would have to be some negotiation before he could settle up; Gallagher said he thought he would be entitled to roughly 8%; Gallagher mentioned that the plaintiff was paying its drivers 8% commission, and Gallagher thought that was a fair commission for him. Peterson testified that 8% of the total contract price paid by the State for July, 1958–March, 1959 would be $8781.44. Peterson had another conversation, in person, with Gallagher about the proceeds in question in June, 1959, at which time Peterson made inquiry concerning the check for the March, 1959 products and the defendant said: "I've got the money,—you come and get it."

The defendant Gallagher was called by the plaintiff under section 60 of the Civil Practice Act for cross examination. He confirmed the facts as to the several bids, furnishing of the milk products by Beatrice, his receipt of the several State checks and delivery thereof to Beatrice, except the March, 1959 check for $12,262.77. He testified he had had a conversation with Mr. Wilkinson, the deceased predecessor Branch Manager of the plaintiff's Bloomington office, prior to June, 1958 and at various later meetings before each bid involved relative to what the defendant called an agreement (oral,—and apparently secret) that Gallagher would do the bidding for supplying dairy products to the Kankakee State Hospital, for Beatrice Foods Co., he would not bid at Lincoln State School, that Gallagher was to receive whenever the arrangement was terminated the unit difference in the price for dairy products between the low bids for such to the Lincoln State School at Lincoln and the low bids for such to Kankakee State Hospital, and that differential would take care of the Kankakee contract on which Gallagher was to bid. He testified he had never made a claim to Beatrice for any of the money asserted to be due him until after this suit was started, he did not call Beatrice and tell them he was keeping the March, 1959, $12,262.77 check, and that the differential Beatrice owed him between the Kankakee and Lincoln unit bids covering the three separate periods concerned for these products amounted to $13,103.27 for July, 1958–March, 1959. He said that after the suit was brought and prior to trial he had paid Beatrice $1100 on an open account for dairy products purchased by him from Beatrice,—a matter not presently involved, but which was originally the subject of Count II of the complaint. Gallagher further testified there was no such understanding as he claimed between him and Wilkinson for Beatrice prior to June, 1958 for the third quarterly period of 1958

19

and following. In March, 1958 the defendant had made a similar bid to supply Kankakee State Hospital, Beatrice had similarly actually performed the contract, and he had similarly turned over to Beatrice all the State checks he'd received for that prior quarter April–June, 1958. He said he received no compensation as to that period,—they had not set up a figure he was to receive. He did not deny Mr. Peterson's testimony concerning Gallagher's conversation in May, 1959 that he wanted an 8% commission, or his comment in June, 1959 to the effect "I've got the money,—you come and get it."

The defendant argues there was a joint venture between him and Beatrice for supplying milk products to the State of Illinois for the Kankakee State Hospital during July, August and September, 1958, whereby the plaintiff would supply the milk products, packaging them in the defendant's cartons, and delivering them to Kankakee, at the plaintiff's expense, if the defendant would bid for that Kankakee contract and if he would abstain from bidding for a similar contract to supply milk products to Lincoln State School, and in consideration the plaintiff was to pay him the difference in money between the gross half-gallon unit price of milk thus sold for use at Kankakee State Hospital and the gross half-gallon unit price for such paid by the State to the successful bidder at Lincoln State School for the same period, which agreement was extended for the following periods through March, 1959, under which his accumulated consideration due is $13,103.27, and he therefore retained the last State check or its proceeds for $12,262.77.

The pleadings do not disclose any alleged counterclaim or set-off by the defendant. Neither was there any evidence offered or sought to be offered affirmatively on the defendant's behalf. The defendant in his cross-examination under section 60 of the Civil Practice Act admitted a general course of dealings

20

between himself and Beatrice during all the periods referred to in the complaint from July, 1958–March, 1959, and also for the previous period of April–June, 1958.

Assuming the defendant's testimony under section 60 can properly be considered, in part, affirmatively as evidence in support of his theory, the jury was necessarily confronted with contradictory testimony between the plaintiff's books, records, and accounts and the other facts and circumstances in evidence, and what the defendant said as to an alleged oral and evidently secret agreement with Wilkinson, but beyond that there was contradictory testimony between what the defendant himself said at one point and what he said at other points, especially as to Gallagher's request of the plaintiff and comments after Wilkinson's death, as related by Peterson and not denied by Gallagher. There was evidence at that point, assuming it may be so considered, that the defendant considered he was entitled to an 8% commission. Such would amount, if figured on the total sales (assuming that is what Gallagher referred to), to approximately $8,781.44 for the whole of the several periods involved from July, 1958–March, 1959. But, the milk price differential agreement matter between Kankakee State Hospital and Lincoln State School which he claims at another point would be $13,103.27. There is a considerable difference between his claims for apparently $8781.44 under one theory and apparently $13,103.27 under a different theory, and the jury were entitled to take that into account in considering the evidence. It is fundamental that courts lend a very unwilling ear to and carefully scrutinize testimony by interested persons as to what decedents are said to have said, assuming it is, in any event, admissible and admitted in evidence, as such evidence is subject to abuse, and such testimony must be considered with all the other evidence in the case: Kesh-

21

ner v. Keshner (1941), 376 Ill 354, 33 NE2d 877. Other unanswered questions which the jury doubtless weighed and considered are why there is no memorandum in writing anywhere as to a matter of this considerable importance involving possibly over $13,-000 for the periods concerned,—why was the subject left to depend entirely on an alleged oral and secret agreement,—why did the defendant make no claim for the alleged price differential or commission until after the end of the last period and after Mr. Wilkinson's decease,—why were there no interim payments of anything by the plaintiff to the defendant,—why were all the State checks except the last one remitted by the defendant to the plaintiff without question,— why did not the defendant deny Mr. Peterson's testimony as to his request for an 8% commission in May, 1959 if it was not true,—why did he not inform the plaintiff he was keeping the last check for $12,262.-77 because the plaintiff owed him $13,103.27 under the alleged price differential agreement,—why did he during the pendency of the suit pay the plaintiff the $1199.32 balance on his open account if, as he says, the plaintiff owed him $13,103.27 and the $12,262.77 check he'd kept plus that $1199.32 would have practically offset what he says the plaintiff owed him,— and why did the defendant assert no counterclaim or offset in his pleadings?

The jury was necessarily required to pass on the credibility of all the testimony and all the witnesses including both Peterson and Gallagher, and determine the inherent probability or improbability of that testimony and decide which, if any, theory was correct. There may be such inherent improbability in the testimony of a witness that neither Court nor jury are required to give it credence, even in the absence of directly conflicting testimony: Tepper v. Campo (1947), 398 Ill 496, 76 NE2d 490. The testimony of a witness may itself contain its own impeachment, and

if so, neither Court nor jury is required to give it credence: Schueler v. Blomstrand (1946), 394 Ill 600, 69 NE2d 328; Stephens v. Hoffman (1916), 275 Ill 497, 114 NE 142. Facts and circumstances in evidence may indicate the testimony of a witness is inherently improbable and may thus contradict such testimony: Cf. Morris v. Pennsylvania R. Co. (1956), 10 Ill App2d 24, 134 NE2d 21. The jury here apparently did not accept the version of the defendant Gallagher under either theory testified about, but accepted the other evidence as to the books, records, accounts, and other facts and circumstances, as well as the admissions in the pleadings, and we cannot say their verdict is against the manifest weight of the evidence. It was for them to weigh all the evidence, consider the conduct and demeanor of all the witnesses, judge the credibility thereof, and, where there were conflicts, to determine who and what to believe. We cannot substitute our judgment for that of the jury in passing upon those matters, and we do not believe an opposite conclusion is clearly apparent: Collister v. Allen E. Kroblin, Inc. (1961), 30 Ill App2d 288, 174 NE2d 911.

The defendant argues that the Court erroneously admitted the evidence of Mr. Peterson in regard to the conversation he had with the defendant in May, 1959 in which the defendant stated, in substance, that he thought he would be entitled to a roughly 8% commission, the defendant urging that this referred to matters of compromise or settlement. We cannot agree. Statements of a witness made out of Court, if contradictory on a material point to his testimony as a witness, may be introduced into evidence, not as substantive proof of the truth of such statements, but as tending to impeach or discredit the witness: Hapke v. Brandon (1951), 343 Ill App 524, 99 NE2d 636. An offer of settlement, as such, is, of course, not admissible into evidence, but independent and relevant admissions of fact are: Steiner v. Rig-A-Jig Toy Co.

23

(1956), 10 Ill App2d 410, 135 NE2d 166; Hook v. Bunch (1913), 180 Ill App 39. The indicated comment by the defendant was made prior to any controversy arising from the arrangement; no differences between the parties were then being sought to be adjusted at that time; there was not then any effort by either party to compromise: Sipes v. Barlow (1915), 197 Ill App 239. At that time there was no suit pending and no indication of any litigation between the parties,—this suit was not brought until March, 1961, nearly two years later,—that conversation cannot be considered as having taken place in an attempt to settle, compromise, or avoid any litigation pending or then contemplated by the parties: Yowell v. Hunter (1949), 403 Ill 202, 85 NE2d 674.

■ The defendant also claims the Court erred in admitting irrelevant and incompetent evidence as to the earlier, and what he says was a different, agreement of the parties for the prior period of April–June, 1958, as to the otherwise similar transactions as to dairy products for Kankakee State Hospital, which was admittedly similarly fulfilled by the plaintiff under a similar bid actually made by the defendant to the State, and all the State checks for which were similarly delivered by the defendant to the plaintiff, apparently without question. The matter referred to was not too remote in time. It did relate analogously to the same general subject and tended to indicate a general course of dealings between the plaintiff and defendant as to bids to supply these products to Kankakee State Hospital in a certain manner over a consecutive closely related period of some months. For the period April–June, 1958 the defendant remitted and the plaintiff received all the State checks he had received, with no claims by the defendant either for a price differential or for commissions. Whether the facts and circumstances considered in their entirety, with all the other evidence, indicated the parties had

24

the same or a different agreement for July, 1958–March, 1959, or any part thereof, as compared with April–June, 1958, was for the jury to say. This evidence may have been somewhat persuasive as to what the parties' later agreements were for July, 1958–March, 1959. It was not incompetent or irrelevant. The weight and significance thereof, if any, was for the jury. El Reno Wholesale Grocery Co. v. Stocking (1920), 293 Ill 494, 127 NE 642, illustrative of the cases the defendant suggests on this point, is not applicable.

■ ■ The defendant's last contention is that Count I does not allege a cause of action. This is an action ex contractu for money had and received by the defendant to the use of the plaintiff, money having been paid to the defendant which legally belonged to and ought to have been paid to the plaintiff. In an implied contract the agreement of the parties is arrived at by a consideration of their acts and conduct. In a quasi contract obligation the principle upon which it rests is equitable in nature,—it is an obligation similar in character to that of a contract, but which arises not from an agreement of the parties but from some relation between them or from a voluntary act of one of them,—it is an obligation springing from voluntary and lawful acts of parties in the absence of any agreement,—it arises not from consent but from the law or natural equity. The liability in quasi contract exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. In implied contracts the agreement defines the duty. In quasi contracts the duty defines the contract. At common law an action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. The action is in form

25

ex contractu. The right to recover is governed by principles of equity although the action is at law. It is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which ex aequo et bono belongs to another. The State here voluntarily paid to the defendant and the defendant voluntarily received $12,262.77 which under the law and the facts and circumstances pleaded belonged to the plaintiff. An action for money had and received to the use of the plaintiff is maintainable to recover the money, either under the theory of an implied contract or under the theory of a quasi contractual obligation. Count I, we believe, does allege a good cause of action: Board of Highway Com'rs v. City of Bloomington (1911), 253 Ill 164, 97 NE 280. It is not so wanting in facts or essential details that it fails to state a cause of action: Cf. Holland v. Richards (1955), 4 Ill2d 570, 123 NE2d 731.

The judgment is correct and will be affirmed.

Affirmed.

SPIVEY and SMITH, JJ., concur.