The **UNITED STATES** of America, for the Use of J. C. **SCHAEFER ELEC-TRIC, INC.,** an Illinois corporation, Plaintiff,

v.

**O. FRANK HEINZ CONSTRUCTION CO., Inc.,** an Illinois corporation; American Casualty Co. of Reading, Pennsylvania, a Pennsylvania corporation; and National Fire Insurance Co. of Hartford, a Connecticut corporation, Defendants.

No. P–3023.

United States District Court
S. D. Illinois, N. D.

June 20, 1969.

Eugene R. Johnson, Peoria, Ill., for plaintiff.

John C. Parkhurst, Peoria, Ill., for defendants.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause comes before the Court on plaintiff's motion for summary judgment, raising the sole question of whether " * * * the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure.

■ This suit is brought under the Miller Act, 40 U.S.C. §§ 270a, 270b (1964). This Act is highly remedial in nature to assure the payment of federal subcontractors and "is entitled to a liberal construction and application." MacEvoy v. United States, for Use and Benefit of Calvin Tomkins, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944).

A great many facts are admitted and therefore not in dispute. Among such are the following: On or about July 6, 1966, the real plaintiff herein, J. C. Schaefer Electric, Inc. (herein called Schaefer), orally communicated a "bid" to the president of defendant Heinz of $508,800.00, plus $28,740.00 for alternative "A", to perform the electrical work required on a proposed construction project on which Heinz was submitting a general contractor's bid to the United States. On July 7, 1966, Heinz submitted its bid and named Schaefer therein as the proposed electrical subcontractor. Heinz thereby became the successful bidder on the government contract. Shortly thereafter, O. Frank Heinz, president of defendant Heinz, orally asked Schaefer to reduce the amount of its bid for the electrical work and Schaefer refused. On August 2, 1966, defendant Heinz filed with the contracting officer of the General Services Administration a request to permit Heinz to change the electrical subcontractor in his bid. Under the government contract terms this may be done only with government consent. This request was initially denied August 11,

1966, with final denial ordered October 20, 1966.

On August 12, 1966, defendant Heinz entered into a construction contract with the United States, acting by and through the Public Building Service of the General Services Administration. Thereafter, defendants American Casualty Company of Reading, Pennsylvania, and National Fire Insurance Company of Hartford entered into a Payment Bond as sureties for defendant Heinz.

On November 2, 1966, Schaefer received from defendant Heinz a message on corporate paper and signed by the vice president of Heinz which stated:

"Confirming my phone conversation with you of today—we will write you an order to proceed with Base Bid & Alternative 'A' work for the quoted price. * * * You will receive our order this week. In the meantime you will proceed with the work. * * *"

On or about November 2, 1966, Schaefer, with the knowledge and consent of defendant Heinz and under the above quoted authority, commenced to perform the subject electrical work.

On November 8, 1966, Schaefer received a purchase order numbered GSA–95–125 which contained therein the following terms:

"This contract is subject to the possible termination which may result from a pending appeal to the Board of Contract Appeals of the General Services Administration of the United States Government; which appeal filed on October 27, 1966, by O. Frank Heinz Construction Company, Inc., seeks the right to substitute a subcontractor for all or a part of the work and materials referred to in this Purchase Order.

"Acceptance of this contract constitutes acceptance of said condition of substitution."

These terms were unacceptable to Schaefer and an amended purchase order was requested by letter which, in pertinent part, stated:

"Fourth: * * * It should be obvious that we can not become committed to purchase materials for this job nor to start the same under the threat of possible termination through the appeal which you mentioned. We had thought all difficulties relating to this matter were fully settled.

"We shall expect an amended Purchase Order to be sent to us promptly, taking care of the above objections."

An amended purchase order was never received by Schaefer. After other correspondence, not pertinent to this case, Schaefer mailed a letter to defendant Heinz on November 15, 1966 stating that Schaefer would proceed with the work based upon Heinz's letter to it dated November 2, 1966.

During the ensuing course of this construction work, defendant Heinz issued to Schaefer a series of sixteen "Change Orders" initiated by and through the president of Heinz and bearing his signature. These orders had printed on their face the words "Contract Amount" and "Revised Contract Amount," the first of which stated the amount submitted by Schaefer to defendant Heinz on July 6, 1966 as the "Contract Amount." This amount was accurately and successively changed as change orders were issued, so that the final figure was Schaefer's bid price adjusted by the changes. The electrical work was completed and accepted by October 23, 1968.

Schaefer has been paid $463,671.00 to date, but seven invoices and three requests for payment of the balance of $78,933.04 have been submitted to defendant Heinz and have not been honored. That balance, which is the balance of the Schaefer bid price as adjusted by change orders, is the subject of this law suit.

Rule 56 was intended to avoid trial of immaterial issues where the material facts are certain. In ruling on a motion for summary judgment, this Court's function is to determine whether

a genuine issue of material fact exists and grant summary resolution where there is no such issue, and on the substantive law the movant is entitled to judgment. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment was properly granted, however, where movant's direct, positive and uncontradicted evidence was opposed only by claim of a contrary inference arising from the proof. Lavine v. Shapiro, 257 F.2d 14 (7th Cir. 1958).

Defendant's sole contention is that summary judgment should not be granted on the ground that there is a genuine issue of material fact for the jury as to whether the defendant Heinz' president ever unequivocally accepted the fixed price offer of Schaefer. Heinz contends that he did not—that there was no "meeting of the minds" on the Schaefer price for the electrical work. Heinz acknowledges that Schaefer was entitled to something for his work and materials, but contends that it must be on a *quantum meruit* basis. Said defendant seeks to support his contention by distinguishing between the admitted or "evidentiary" facts as stated hereinabove, and the "ultimate" fact of whether a contract has been formed—whether a fixed price contract could have been formed without his conscious and intentional assent to the price. This Court recognized that there are distinctions between "ultimate" and "evidentiary" facts, but does not find the distinction applicable to the question now before the Court.

As the defendant Heinz points out in its brief, in order to grant Schaefer's motion, the Court must conclude that the offer of Schaefer was accepted by defendant Heinz, if not by conscious and intentional acceptance, then by a course of conduct which constitutes acceptance as a matter of law. It is not necessary for the determination of this case, and this Court does not undertake to determine whether or not an express contract exists between Schaefer and Heinz. Rather, the issue to be determined is whether the conduct of Heinz, as a matter of law, constitutes acceptance and thereby establishes an implied contract between the parties. Whether or not a contract exists here, therefore, is a question of law and not one of "ultimate fact" preventing summary judgment. Where the essential facts are not in dispute, the question of whether an implied contract exists is one of law. 17A C.J.S. Contracts § 611 (1963); 12 I.L.P. Contracts § 46 (1955); Cottingham v. National Mut. Church Ins. Co., 290 Ill. 26, 124 N.E. 822 (1919).

Implied contracts include contracts implied in fact and "quasi" or constructive contracts. In the case of In re Estate of Brumshagen, 27 Ill.App.2d 14, 23, 169 N.E.2d 112, 117 (1960), the Court stated:

"An implied contract is proven by circumstances showing that the parties intended to contract or by circumstances showing the general course of dealing between the parties. An agreement may be said to be implied when it is inferred from the acts or conduct of the parties * * *"

It is clear that a "meeting of the minds" is not required to be shown by an unequivocal acceptance in an implied contract. Neither a written offer and acceptance nor oral counterparts are essential to establish a contractual relationship, for unambiguous conduct of one party toward the other under such circumstances as clearly to manifest an intention that one party perform and the other party compensate for such performance is sufficient. 17 C.J.S. Contracts § 4b (1963).

It is also clear that a contract implied in fact must contain all the elements of an express contract. But, " * * * where it appears that one has in fact made an offer to another person and such person, by his acts or conduct, has accepted the offer * * * it will be held that the latter has entered into a contract." Voit Rubber Co. v. Peoria

Coca Cola Bottling Co., 280 Ill.App. 14, 22 (1935). Conduct, therefore, can substitute for written or oral acceptance in meeting the requirements for a contract implied in fact. This applies to the price which is the only element questioned here. It should be noted that only one price was ever mentioned here and it was never changed except by specific and mutually agreed change orders.

 In the case of contracts implied in fact, the contract defines the duty, while in the case of constructive contracts the duty defines the contract. This relationship is well set out in Beatrice Foods Co. v. Gallagher, 47 Ill.App. 2d 9, 25, 197 N.E.2d 274, 283 (1964) when the Court stated:

> "In an implied contract (fact) the agreement of the parties is arrived at by a consideration of their acts and conduct. In a quasi contract obligation the principle upon which it rests is equitable in nature,—it is an obligation similar in character to that of a contract, but which arises not from an agreement of the parties but from some relation between them or from a voluntary act of one of them, * * *"

Thus "quasi" contracts are one more step removed from a "meeting of the minds" and in fact are determined without regard to the assent of the parties. The only essential element for such a contract is the receipt of a benefit which would be inequitable to retain. 17 C.J.S. Contracts § 6 (1963).

 Looking to facts that are undisputed, and finding nothing to render them even slightly ambiguous, this Court is fully satisified that, as a matter of law, there is an implied contract between Schaefer and the defendant Heinz at the price originally quoted, as subsequently changed by agreed change orders. In brief, the facts that defendant Heinz used Schaefer's name in the bid submitted to the General Services Administra-

tion after receipt from Schaefer of its offer; that Schaefer refused to lower his price; that the defendant Heinz' request to substitute subcontractors was denied; that the message of November 2, 1966 instructed Schaefer to proceed with the work at the "quoted price"; that full performance with the admitted knowledge and consent of defendant Heinz followed; that sixteen change orders had the designation of "Contract Amount" and "Revised Contract Amount" upon their faces, all clearly consistent with a contract at the amount shown thereon, clearly establish an implied contract. The conditional purchase order of defendant Heinz, which was rejected by Schaefer, was simply a nullity, just as if it were never issued. It adds nothing by way of support to the contract found here, but it certainly does not destroy that contract or tend in any way to do so.

Since this determination of implied contract on the undisputed facts here is a matter of law, there is no genuine issue as to any material fact for trial. Hence, the motion, in the opinion of this Court, must be allowed.

 Schaefer is entitled to statutory interest of five percent on the balance due of $78,933.04. Ill.Rev.Stat. ch. 74 § 2 (1967). It is agreed that Schaefer completed its work on October 23, 1968, but the affidavit of Schaefer's secretary shows a deduction item of $379.84, dated January 20, 1969, producing the contract balance found above. Since the said unpaid contract balance did not become fixed until January 20, 1969, interest should commence from that date. Five months' interest to date is $1,644.41.

Accordingly, it is ordered that plaintiff's motion for summary judgment is allowed and judgment in the amount of $80,577.45, including interest from January 20, 1969, is entered against defendants, at defendants' cost.