(No. 30077.—

SIDNEY Z. TEPPER, Appellee, *vs.* ALICE CAMPO *et al.*— (MARGARET D. BLISS *et al.*, Appellants.)

*Opinion filed November 20, 1947—Rehearing denied Jan. 14, 1948.*

JOHN O'CONNELL FITZGERALD, of Chicago, for appellants.

THEODORE SHARF, of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

A decree of the superior court of Cook County ordered partition of real estate situated at 929-931 Chicago Avenue in the village of Oak Park, in said county, between the plaintiff, Sidney Z. Tepper, and one of the defendants, Margaret D. Bliss. From that decree this appeal has been prosecuted by Margaret D. Bliss and her husband, Jay P. Bliss.

The evidence, oral and documentary, discloses the following facts: The property in question, which has located thereon a two-story frame dwelling house, was conveyed to Margaret D. Bliss December 9, 1922, by warranty deed from one Andrew Porter, and since then she and her husband, Jay P. Bliss, have continuously occupied the same as their residence. February 15, 1926, appellants executed a trust deed securing a note in the amount of $7000, and on July 16, 1926, executed a second trust deed to secure payment of 30 promissory notes of that date, numbered 1 to 30, both inclusive, each being for the principal sum of $150 and due, respectively, 1 to 30 months after date. April 7, 1927, Homer H. Schneider, the owner of the note secured by the first trust deed, filed in the circuit court of Cook County his complaint to foreclose. A decree of foreclosure was entered October 31, 1927, the premises sold under the decree November 25, 1927, and on January 14, 1929, redemption from this sale was made by Raymond Moore, owner of the notes secured by the junior trust deed. An appeal had been taken by Mr. and Mrs. Bliss from the foreclosure decree and on January 21, 1929, that decree was reversed by the Appellate Court and the cause re-

manded. January 22, 1929, Mr. and Mrs. Bliss conveyed the property by quitclaim deed to one Albert R. Freed, which deed on the following day was recorded in the office of the recorder of deeds of Cook County. June 9, 1930, Raymond Moore filed a complaint in the superior court of Cook County against Mr. and Mrs. Bliss and Freed and his wife, seeking a decree of foreclosure for the amount which he alleged to be due him upon the notes secured by the junior trust deed and also the amount which he alleged to be due him because of his redemption from the Schneider sale. This suit was, on March 11, 1936, dismissed for want of prosecution.

Albert R. Freed died intestate January 4, 1938, leaving him surviving Fannie Freed, his widow, and Morton D. Freed and Alice Campo, his children, as his only heirs-at-law. Administration proceedings upon his estate were commenced January 12, 1938, and Morton D. Freed was appointed administrator. He inventoried no real estate as belonging to his father at the time of his death, and on May 15, 1941, filed his final account and report as administrator, showing the estate insolvent.

September 26, 1942, Fannie Freed and Morton D. Freed and wife conveyed by quitclaim deed their interest in the property here in question to the plaintiff, Sidney Z. Tepper, who on October 27, 1942, filed this suit for partition. During the pendency of the suit in the court below, the defendants Alice Campo and her husband, by quitclaim deed, conveyed their interest in the property to appellant Margaret D. Bliss.

Appellants, Margaret D. Bliss and Jay P. Bliss, filed their answer alleging that Margaret D. Bliss was, and had been since December 9, 1922, the absolute owner of said real estate in fee simple, and that she and her husband had, since that date, been in the open, continuous and undisputed possession thereof and residing thereon, and had during that time always asserted and claimed that Margaret

D. Bliss was the absolute owner thereof. They admitted the execution by them of the quitclaim deed to Albert R. Freed, but alleged that the same was intended only as security for a loan of $5000, which Freed had agreed to, but did not, make to them. They alleged that Freed never at any time took possession of said real estate, or repaired or improved the same, or paid any taxes thereon, or asserted or claimed any rights whatsoever by virtue of said quitclaim deed. They denied that Freed ever had any interest in said property, or that Fannie Freed, Morton D. Freed or Alice Campo ever had any interest therein, or that the plaintiff has any right, title or interest in or to the same. They further set up that this proceeding was barred by section 4 of an act of the General Assembly entitled "An Act in regard to limitations."

The cause was referred to a master in chancery, who recommended that partition be granted. Objections and exceptions to the master's report were overruled and a decree entered by the court in accordance with the master's recommendation. The findings of fact incorporated in the decree were the same as those made by the master. Both the master and the court made findings that the complaint in the Moore foreclosure suit alleged that appellants conveyed the fee-simple title to the property in question to Albert R. Freed by quitclaim deed dated January 22, 1929, that Albert R. Freed filed a sworn answer to said complaint in which he admitted the conveyance and claimed to be the owner of said real estate in fee simple, that appellants did not contest such sworn answer of Freed, but filed an answer in the cause in which they did not assert that they were the owners of the property and did not deny the execution of the deed to Freed. The report and decree also contained a finding that there was no evidence that Sidney Z. Tepper, Fannie Freed, Morton D. Freed or his wife had any knowledge of any agreement between Albert R. Freed and appellants, and that there was nothing

of record in the chain of title which would afford appellee any notice that the conveyance to Albert R. Freed was subject to any agreement between him and appellants.

Morton D. Freed testified that about six months after his father's death he found the quitclaim deed from appellants to his father and a check dated January 22, 1929, drawn by his father, payable to appellants, endorsed by them, and stamped by the bank "paid;" that the deed and the cancelled check were together, and there were no other papers pertaining to this property; that prior to that time he had never heard of the property; that upon investigation he found the property to be worth $6000, with a $10,000 mortgage, a $3500 second mortgage, and ten years' delinquent taxes against it, and upon advice of his attorney, he did not inventory it or mention it in his final report as administrator; that he paid no further attention to the property until appellee called him, and two days later he and his mother executed a deed to appellee, for which they were paid $250. He further testified he had paid the claims against his father's estate after the estate had been closed as insolvent.

Appellee testified that he was an attorney with offices at 10 South LaSalle Street, Chicago; that he learned of the property from Raymond Moore; and that both Morton Freed and Raymond Moore told him that appellants were in possession of the property and had been for twenty years.

Margaret D. Bliss testified that she and her family had resided on the property continuously for twenty-three years and during that time had made improvements costing approximately $1000, that Freed never at any time inspected the premises or demanded possession thereof, or made any repairs or improvements, and that she and her husband never paid any rent, but claimed the ownership of the property during the entire time of their occupancy. She testified that she was present at the office of her attorney, Harold O. Mulks, January 21, 1929, and took part in a

conference with Mulks, Albert R. Freed, her husband, and two other men whose names she did not know, but one of whom was Freed's attorney; that Freed said "I believe I can handle the Raymond Moore claim against the property at 931 Chicago Avenue. I have had experience in handling matters of this kind, and in addition to that, after this claim is settled I will take care of the back taxes on this property and will have a mortgage made to cover the expenses to which I have been on this thing and also a fee of $1000 for my services in the matter. In return for that I would like to have a deed. I feel I could do more with a deed for the property made out in my name." She testified that Freed said "I will write a check for the amount of $5000," and that it was then discussed with the others as to the manner of handling it; that Mulks said the proper way was to have Freed write a check, take it to the bank, accompanied by appellants who would receive the money at the bank and there turn it over to Freed; and that the man who was Freed's attorney said that would be the best way to handle it. The witness further testified that two or three days later she and her husband were again at Mulks's office and while there signed the deed to Freed; that Freed was there and had the $5000 check and a paper which he showed to Mulks, their attorney; that she, her husband and Freed went from there to the bank, Freed carrying the deed, the check and the other paper; that the check was endorsed before they left the office; that at the bank Freed asked them to wait while he talked with an officer of the bank; that he was gone a few minutes and came back with a man to whom he said "These are the people to cash this check;" that Freed handed the check to her husband, her husband handed it to the cashier, the man told the cashier it was all right, the cashier handed her husband five $1000 bills, her husband handed the money to Freed, who handed appellants the paper signed by him, and appellants then left the bank; that nothing more was

said or done and Freed was still at the bank when they left; that the paper handed them was lost, but that it read substantially as follows: "Received of Margaret D. and Jay P. Bliss a deed to the property at 931 Chicago Avenue, also $5000 in cash to be used in clearing a claim of Raymond Moore against this property, the amount paid not to exceed $5000. When this claim has been cleared I promise to pay the taxes outstanding against this property, have a mortgage written to cover the amount expended for the Raymond Moore claim, the back taxes and $1000 for my services. At this time I will return the deed given to me to Margaret and Jay P. Bliss."

The testimony of the appellant Jay P. Bliss was substantially the same as that of his wife. He further testified that on the occasion of the first conference at Mulks's office there were present besides himself and his wife, Mulks, Freed, a man whose name was Batton and a man who was Freed's attorney; that Batton was a real-estate lawyer in Mulks's office and was also present on the occasion when the deed was signed; that the witness did not know who Freed's attorney was and that Batton "is now dead." This witness also testified to prior conversations with Freed in regard to financing the property, and to conversation with him subsequent to the execution of the deed; that each time he inquired of Freed in regard to the matter after the making of the deed, Freed would tell him he had not been able to do anything yet and that they would have to wait; and that at one time Freed offered to reconvey the title, but Bliss told him to go ahead and see what he could do with it. Bliss testified that on one occasion he accompanied Freed to the office of Moore's attorney when Freed made a tender in settlement of the Moore claim.

Another witness, Robert Young, testified he was in Freed's office at one time when a man came in and wanted a deed to the Bliss property and Freed told him he would have to see Bliss about it.

The records of the bank upon which the $5000 check was drawn were introduced in evidence, showing that on the day in question Albert R. Freed made two deposits, one of $4036 and one of $1000, that there was one withdrawal from his account on that day and it was in the sum of $5000, and that at the close of business on that day his account showed a balance of $2487.98.

It was stipulated that no taxes of any kind have been paid by any person whomsoever since the year 1926.

We have related above the substance, in brief, of all the evidence in the case, for the reason that the vital questions involved on this appeal are primarily those of fact. However, in approaching a consideration of the determinative question presented whether the court erred in refusing to enter a decree finding the appellant Margaret D. Bliss to be the owner of the real estate involved, it is well to refer to the established principles of law governing deeds which are intended, or which are alleged to have been intended, as security in the nature of a mortgage.

Section 12 of the act to revise the law in relation to mortgages of real and personal property (Ill. Rev. Stat. 1945, chap. 95, par. 13,) provides that every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. It is the unquestioned law in this State that the use of an absolute conveyance in lieu of a mortgage confers no greater rights on the grantee than those which he would have obtained had a mortgage been used. The rule also is, as this court has consistently held since the decision rendered in *Purviance* v. *Holt,* 3 Gilman, 394, that parol evidence may be admitted to show that an absolute deed, whatever may be it covenants, whether of warranty or otherwise, was intended as a mortgage or mere security for the payment of a debt, and the grantor can have relief in equity. Parol evidence is admissible to prove

that an absolute conveyance, despite its apparently unambiguous character, is in fact a mortgage and impressed with a condition of defeasance. However, when a party asserts that a deed absolute in form is in fact a mortgage, he assumes the burden of establishing that allegation by clear, satisfactory and convincing evidence. (*Gillock* v. *Holdaway,* 379 Ill. 467.) In the absence of such proof the law presumes that a deed is what it purports to be, that is to say, an absolute conveyance. *Gannon* v. *Moles,* 209 Ill. 180.

The duty, therefore, devolves upon this court in the instant case to consider whether the evidence as disclosed by the record here is of such clear, satisfactory and convincing character as to justify this court in holding that the deed from appellants to Albert R. Freed was taken as a mortgage to secure the repayment of future advances to be made by him to the appellants. The only direct evidence on this point was that of appellants. Their testimony was unreasonable and improbable. It is scarcely credible that persons of ordinary intelligence would indulge in the absurd and meaningless procedure to which appellants testified in explanation of the $5000 check; and it is still more inconceivable that the attorney of appellants would, as appellants testified he did, say that the proper way to handle the matter was for Freed to write the check to appellants, and appellants cash the check and turn over the proceeds to Freed, or that three attorneys would agree that it was necessary and proper for Freed and appellants to perform the idle and empty ceremony of appellants cashing Freed's check, holding the cash in their hands for a fleeting moment and then returning it to Freed from whose bank account it had been taken.

Appellants stress the fact that their testimony as to the purpose for which the deed was given and their explanation of the $5000 check was uncontradicted either by positive testimony or circumstantial evidence. This court has

repeatedly held that there may be such inherent improbability in the testimony of a witness that neither court nor jury are required to give it credence, even in the absence of any conflicting or contradictory evidence. (*Schueler* v. *Blomstrand,* 394 Ill. 600; *Stephens* v. *Hoffman,* 275 Ill. 497; *People* v. *Davis,* 269 Ill. 256.) The uncontradicted testimony of interested witnesses to an improbable fact does not require acceptance of their testimony. Courts are not required to believe an unreasonable story, even though it is not contradicted, merely because it has been sworn to by a witness on the trial of a case. (*People* v. *LeMorte,* 289 Ill. 11.) Furthermore, appellants' testimony, unreasonable in itself, becomes more unsatisfactory because of appellants' failure to introduce, in corroboration thereof, positive testimony which was within their reach and could have been produced by them if their statements were true. Harold O. Mulks, who was appellants' attorney at the time of the conveyance to Freed and continuously thereafter acted as such during the trial of the case at bar, was the only known living person who could corroborate or contradict the story of appellants; but appellants did not see fit to offer his testimony in corroboration of their story, evidently preferring to use him as an attorney instead of a witness. It is well settled that the failure of a party to a suit to produce evidence available to him gives rise to a presumption against him. (*Prudential Ins. Co.* v. *Bass,* 357 Ill. 72; *Pipal* v. *Grand Trunk Western Ry. Co.* 341 Ill. 320.) It was incumbent upon appellants to prove that the deed to Freed· was intended only as security in the nature of a mortgage, and their failure to give the court the benefit of the testimony of this witness must work to their disadvantage. It must have been apparent to both appellant and Mulks at the time this suit was instituted that Mulks was a highly important witness, and the only witness by whom appellants' claim that the deed was a mortgage could be corroborated or disproved. It is a

fundamental canon of proof that, where weaker and less satisfactory evidence is offered when stronger and more satisfactory evidence is within the power of the party, the evidence offered should be viewed with distrust. 32 C.J.S. 1079, sec. 1035.

Robert Young testified that while he was sitting in Freed's office one time during the year 1931, he overheard a conversation between Freed and some man he did not know in regard to the Bliss property, that the man said he wanted "something"on the property, and Freed told him he would have to see Bliss. Upon further interrogation he testified that the man wanted a deed. It is obvious, however, from a reading of his testimony that the same is entitled to little, if any, weight. It is not clear, satisfactory and convincing.

The evidence, as disclosed by the record in this case, is by no means so clear, satisfactory and convincing and so free of inconsistencies and inherent unreasonableness and improbability as to warrant this court in declaring the deed from appellants to Freed to be a mortgage.

Neither are appellants entitled to claim the benefit of section 4 of the Limitations Act. (Ill. Rev. Stat. 1945, chap. 83, par. 4.) That section applies only to persons having a connected title "from this State or the United States, or from any public officer or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal, or other person authorized to sell such land on execution, or under any order, judgment or decree of any court of record." Appellants have not brought themselves within the application of this section since the title under which they claim is shown only from an individual, one Andrew Porter.

It is unnecessary to extend this opinion to other questions not controlling, and, in accordance with our views herein expressed, the decree of the superior court is affirmed.

*Decree affirmed.*